# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| PETE HORSTMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ENTELLUS MEDICAL, INC., JOHN K. BAKEWELL, JOSHUA BALTZELL, BRIAN E. FARLEY, SHAWN T. MCCORMICK, DAVID S. MILNE, GUIDO NEELS, JAMES MOMTAZEE, DUKE ROHLEN, ROBERT S. WHITE, EXPLORER MERGER SUB CORP., and STRYKER CORPORATION,<br><br>        Defendants, | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Pete Horstman ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Entellus Medical, Inc. ("Entellus" or the "Company") against Entellus's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Stryker Corporation through its wholly-

owned subsidiary Explorer Merger Sub Corp. (collectively "Stryker").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on January 8, 2018. The Proxy recommends that Entellus stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Entellus is acquired by Stryker. The Proposed Transaction was first disclosed on December 7, 2017, when Entellus and Stryker announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Stryker will acquire all of the outstanding shares of common stock of Entellus for $24.00 per share (the "Merger Consideration").  The deal is valued at approximately $662 million.

3.      The Board agreed to sell Entellus to Stryker through an unfair process and for an unfair price. Three of the directors are employed by funds holding a large number of Entellus shares, and two of those funds have an incentive to quickly liquidate their holdings. In addition, the Board focused solely on selling the Company, which led them to agree to sell the Company for an unfair price.

4.      The Merger Consideration is not a fair price given the positive impact on the Company's finances expected from Anthem's decision to pay for the use of some of Entellus's products. And the Company's own financial advisor, Piper Jaffray & Co. ("Piper Jaffray"), found an implied per share equity value as high as $30.50 for Entellus.

5.      Furthermore, the Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Entellus management, as well as the financial

analyses conducted by Piper Jaffray, Entellus's financial advisor.

6.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive Proxy to be disseminated to Entellus's stockholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to Entellus's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

7.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Entellus.

8.     Defendant Entellus is a corporation organized and existing under the laws of the State of Delaware.  The Company's principal executive offices are located at 3600 Holly Lane North, Suite 40, Plymouth, Minnesota 55447. Entellus common stock trades on NASDAQ under the ticker symbol "ENTL." Entellus develops products for treating ear, nose and throat issues such as sinusitis, nasal airway obstruction and Eustachian tube dysfunction.

9.     Defendant Robert S. White has been President and CEO, as well as a director of the Company since April 2015.

10.    Defendant Brian E. Farley has served as Chairman of the Board since November 2014 and has been a director of the Company since 2008. Farley served as Executive Chairman from April 2015 to January 2016, served as CEO from March 2010 to April 2015 and served as President from March 2010 to November 2014.

11.     Defendant John K. Bakewell has been a director of the Company since 2015. Bakewell served on the board of directors of ev3 Inc. from 2006 to 2010, and served as chair of the audit committee and as a member of the nominating, corporate governance and compliance committee for ev3 Inc.

12.     Defendant Joshua Baltzell has been a director of the Company since 2006. Baltzell is a Venture Partner at Split Rock Partners, LLC ("Split Rock"), a venture capital firm.

13.     Defendant Shawn T. McCormick has been a director of the Company since 2014. McCormick served as Chief Financial Officer and Senior Vice President of ev3 Inc. from January 2009 to July 2010.

14.     Defendant David S. Milne has been a director of the Company since 2006. Milne is a Venture Partner at SV Life Sciences Advisers, LLC ("SVLS"), a venture capital firm, where he served as a Managing Partner from February 2015 to December 2016.

15.     Defendant Guido Neels has been a director of the Company since 2009. Neels is an Operating Partner at Essex Woodlands Health Ventures ("Essex"), a private equity investment firm.

16.     Defendant James Momtazee has been a director of the Company since July 13, 2017. Momtazee is a Member of KKR Management LLC, the general partner of KKR & Co. L.P. ("KKR"), and is the Head of the Americas Health Care team located in KKR's private equity practice.

17.     Defendant Duke Rohlen has been a director of the Company since July 13, 2017. Rohlen was the President and CEO of Spirox, Inc. from February 2013 until it was acquired by Entellus on July 13, 2017.

18.     Defendants White, Farley, Bakewell, Baltzell, McCormick, Milne, Neels,

Momtazee and Rohlen are collectively referred to herein as the "Board."

19.     Defendant Stryker Corporation is a Michigan corporation with its principal executive offices located at 2825 Airview Boulevard, Kalamazoo, Michigan 49002.

20.     Defendant Explorer Merger Sub Corp. is a Delaware corporation and is a wholly owned subsidiary of Stryker.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

22.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Entellus maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Entellus common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

25.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of December 1, 2017, Entellus had approximately 25.4 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file a Definitive Proxy with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)      whether the Class is entitled to injunctive relief or damages as a

result of Individual Defendants' wrongful conduct.

(c)      Plaintiff is committed to prosecuting this action, is an adequate

representative of the Class, and has retained competent counsel experienced in litigation of this

nature.

(d)      Plaintiff's claims are typical of those of the other members of the Class.

(e)      Plaintiff has no interests that are adverse to the Class.

(f)      The prosecution of separate actions by individual members of the Class

would create the risk of inconsistent or varying adjudications for individual members of the Class

and of establishing incompatible standards of conduct for the party opposing the Class.

(g)      Conflicting adjudications for individual members of the Class might as a

practical matter be dispositive of the interests of the other members not parties to the adjudications

or substantially impair or impede their ability to protect their interests.

(h)      Plaintiff anticipates that there will be no difficulty in the management of

this litigation.  A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  The Board Sells the Company Through an Unfair Process and for an Unfair Price

26.      Entellus produces products intended to treat chronic and recurrent sinusitis. The

Company has three main product lines: the XprESS Multi-Sinus Dilation Systems, MiniFESS

Surgical Instruments, and FocESS Imaging and Navigation. A significant portion of the

Company's revenues are earned from the XprESS Multi-Sinus Dilation Systems, which include

balloon sinus dilation products.

27.      While the Company was created in 2006, it was not until January 2015 that it went

public. At that time, Entellus was described as a "solid, long-term investment"[1] with increased revenues and narrowed losses as "promising signs" for the Company.[2] Over the next two years, the Company grew considerably; the Company reported revenue of $61.6 million in 2015, revenue of $75.2 million in 2016 and expected revenue between $92 and $94 million for 2017.

28.     Despite the market's expectations, the Board did not give stockholders the chance to have a long-term investment in Entellus. Within eight months of going public, "informal discussions" had already begun between Entellus and Stryker. Just a few months later, Entellus had engaged Piper Jaffray to "explore strategic alternatives." Less than three years after its initial public offering, Entellus agreed to be acquired by Stryker.

29.     At the time of Entellus's initial public offering, more than 78% of the Company's common stock was held by four funds: Essex, SVLS, Split Rock and Covidien Ventures S.a.r.l. After the offering, those four funds held approximately 63% of Entellus common stock. Their stock ownership decreased over the next two years, and KKR became a large stockholder after Entellus acquired Spirox, Inc. in July 2017.

30.     Currently, Essex's investment strategy is focused on healthcare companies with revenues between $20 million and $200 million, have growing revenues and are "well positioned for a predictable exit."[3] But earlier Essex investments included venture capital investments, including its investment in Entellus.[4] Essex has made 80 investments and exited from 27 of those

---

[1] "Entellus Medical Aims For $69 Million IPO," Seeking Alpha, December 26, 2014, available at: https://seekingalpha.com/article/2781205-entellus-medical-aims-for-69-million-ipo.
[2] "Entellus Medical IPO: No Headaches Here," Seeking Alpha, January 27, 2015, available at: https://seekingalpha.com/article/2854796-entellus-medical-ipo-no-headaches-here.
[3] Essex Woodlands Healthcare Partners: About Us: More About Our Investment Strategy, available at: https://www.ewhealthcare.com/about/detail/investment-strategy.
[4] Essex Woodlands Healthcare Partners: Portfolio: Current Portfolio Companies, available at: https://www.ewhealthcare.com/portfolio/category/venture.

investments.[5]

31.    Split Rock is an early-stage venture capital firm managing $1 billion in committed capital.[6] Split Rock has made 92 investments and exited from 35 of those investments.[7] In April 2014, according to *Fortune*, Split Rock decided to stop investing in healthcare companies and instead focus on tech companies.[8]

32.    SVLS is a healthcare and life sciences venture capital and growth equity firm managing more than $2 billion in capital.[9] Of SVLS' 184 investments, it has exited from 30.[10] In 2016, SVLS had raised $274 million for its sixth fund, far below its goal of $400 million, itself lower than previous fund targets around $500 million.[11] It was not until April 2017 that SVLS had finally met its target of $400 million.[12]

33.    Essex, Split Rock, SVLS and Covidien Ventures S.a.r.l. all invested in Entellus in the same round of funding, investing $35 million in the Company in 2011, along with Greenspring Associates.[13] Essex, Split Rock and SVLS also invested $30 million in Entellus in 2009,[14] while Split Rock, SVLS and Greenspring Associates invested $15 million in Entellus in 2008,[15] Split

---

[5] Crunchbase: Essex Woodlands Health Ventures, available at: https://www.crunchbase.com/organization/essex-woodlands-health-ventures.
[6] Crunchbase: Split Rock Partners, available at: https://www.crunchbase.com/organization/split-rock-partners, Split rock Partners: About Us, available at: http://splitrock.com/about-us/.
[7] Crunchbase: Split Rock Partners, available at: https://www.crunchbase.com/organization/split-rock-partners.
[8] Primack, Dan, "VC firm Split Rock moves away from healthcare deals," Fortune, April 8, 2014, available at: http://fortune.com/2014/04/08/vc-firm-split-rock-moves-away-from-healthcare-deals/.
[9] SV Health Investors: About SV, available at: http://svhealthinvestors.com/about/.
[10] Crunchbase: SV Health Investors, available at: https://www.crunchbase.com/organization/sv-life-sciences.
[11] Adams, Ben, "Boston VC SV Life Sciences raises $247M toward its sixth startup fund," Fierce Biotech, June 1, 2016, available at: https://www.fiercebiotech.com/biotech/boston-vc-sv-life-sciences-raises-274m-towards-its-sixth-startup-fund.
[12] Dorbian, Iris, "SV Health Investors closes fund at $400 mln," The PE Hub Network, April 11, 2017, available  at: https://www.pehub.com/2017/04/sv-health-investors-closes-fund-at-400-mln/.
[13] Crunchbase: Series E – Entellus Medical, available at: https://www.crunchbase.com/funding_round/entellus-medical-series-e--5a4e108b.
[14] Crunchbase: Series D – Entellus Medical, available at: https://www.crunchbase.com/funding_round/entellus-medical-series-d--77fcadc9.
[15] Crunchbase: Series C – Entellus Medical, available at: https://www.crunchbase.com/funding_round/entellus-medical-series-c--29ae4243.

Rock and SVLS invested $9 million in 2007[16] and Split Rock and SVLS invested $3 million in Entellus in its first round of funding in 2006.[17]

34.     Each of these funds has a representative on the Board: Defendant Baltzell is a Venture Partner at Split Rock, Defendant Milne is a Venture Partner at SVLS, and Defendant Neels is an Operating Partner at Essex. Defendant Momtazee is a Member of KKR.

35.     Split Rock and SVLS had their own reasons to support a sale of Entellus: Split Rock had shifted its focus from healthcare before Entellus went public, while SVLS was having issues raising funds. A sale of the Company could provide the funds with quick liquidity and allow the funds to use those proceeds for other investments.

36.     It's clear from the Proxy that a sale of Entellus was a priority. Less than a year after Entellus's IPO, the Company hired Piper Jaffray to help it consider strategic alternatives, including a possible sale. In 2016, Entellus went as far as negotiating a draft merger agreement with Company A, ending negotiations in November 2016 after Company A's stock price changed. Beginning in September 2017, after discussions with Stryker, the Board decided to consider strategic alternatives but focused only on those companies it believed could acquire Entellus, specifically Company B and Company D. The Board again decided at its October 25, 2017 meeting that the "most likely acquirers" of the Company had been contacted, so there was no need to reach out to any other company. And when considering Stryker's proposal on November 10, 2017, the Board discussed the viability of continuing on a stand-alone basis and selling the Company—no other alternatives were discussed.

37.     Without conducting a market check, and without forming a special committee to

---

[16] Crunchbase: Series B – Entellus Medical, available at: https://www.crunchbase.com/funding_round/entellus-medical-series-b--61cfe005.
[17] Crunchbase: Series A – Entellus Medical, available at: https://www.crunchbase.com/funding_round/entellus-medical-series-a--3bcbd726.

lead the sales process, the Board agreed to enter into an exclusivity agreement with Stryker on November 10, 2017. On December 7, 2017, Entellus entered into the Merger Agreement with Stryker and Explorer Merger Sub Corp.

38.     Between 2015 and 2016, the Company reported a 22% increase in revenue, and forecast an increase of at least 22% in revenue between 2016 and 2017. The forecast increase in revenue was reported on November 1, 2017, before the Company learned that Anthem would cover balloon sinus dilation treatment. That announcement led Entellus to change its projections:

|      | Projected Revenue Before Anthem Announcement | Projected Revenue After Anthem Announcement |
|------|------------------------|------------------------|
| 2018 | $121 million | $124 million |
| 2019 | $151 million | $156 million |
| 2020 | $182 million | $189 million |
| 2021 | $220 million | $228 million |
| 2022 | $266 million | $275 million |

Projections for free cash flow and adjusted EBITDA also increased after the Anthem announcement.

39.     Despite the increase in expected revenues, free cash flow and adjusted EBITDA, Stryker only increased its offer by $0.30 per share, from $23.70 to $24.00.

40.     Given the failure of the Board to perform a market check and the impact of the Anthem announcement on the Company's projections, the Merger Consideration does not offer Entellus stockholders a fair price. This is supported by the analyses of the Company's own financial advisor. For example, Piper Jaffray's *Selected Public Companies Analysis for ENT Medical Technology—Business Profile* implied a per share equity value as high as $29.59, while the *Discounted Cash Flow Analysis* implied a per share equity value as high as $30.50.

**B.  Entellus's Officers Stand to Receive Benefits Unavailable to the Class**

41.     The Proxy acknowledges that the Company's executive officers have interests in

the merger that may differ from those of the stockholders and may create conflicts of interest.

42.    Stock options and restricted stock units that have been awarded to and are held by Entellus's executive officers and directors will be converted into the right to receive either the Merger Consideration or another amount. The treatment of these equity awards, in addition to benefits provided to executive officers through severance agreements and the Company's Officer Severance Plan, will create a windfall for Entellus's executive officers that is unavailable to the common stockholders. For example, as demonstrated in the following chart, the executive officers and Board members will obtain more than $41.1 million from their equity awards and stock holdings:

| Name | Value of Vested Stock Options | Value of Unvested Stock Options | Value of Unvested RSUs | Value of Common Stock |
|---|---|---|---|---|
| ***Non-Employee Directors*** | | | | |
| John Bakewell | $57,400 | $53,100 | $60,000 | $0 |
| Josh Baltzell | $231,200 | $53,100 | $60,000 | $68,400 |
| Brian Farley | $4,239,013 | $599,995 | $60,000 | $6,941,832 |
| Shawn McCormick | $247,000 | $53,100 | $60,000 | $70,584 |
| David Milne | $247,000 | $53,100 | $60,000 | $0 |
| Guido Neels | $247,000 | $53,100 | $60,000 | $360,000 |
| James Momtazee | $3,956 | $43,519 | $90,000 | $0 |
| Duke Rohlen | $3,956 | $43,519 | $90,000 | $894,816 |
| ***Current or Former Executive Officers*** | | | | |
| Robert White | $7,403,111 | $3,195,183 | $912,000 | $448,080 |
| Brent Moen | $264,940 | $435,910 | $180,000 | $146,400 |
| Donald Gonzales | $0 | $302,400 | $480,000 | $0 |
| Mike Rosenthal | $5,631 | $431,969 | $720,000 | $0 |
| Jonelle Burnham | $0 | $0 | $0 | — |
| Martha Christian | $0 | $316,500 | $0 | $0 |
| Kevin Mensink | $1,082,513 | $0 | $0 | — |
| Stephen Paidosh | $2,290,731 | $173,557 | $180,000 | $0 |
| Karen Peterson | $992,083 | $237,781 | $240,000 | $545,616 |
| Tim Petrick | $937,148 | $217,963 | $180,000 | $2,044,392 |
| Thomas Williamson | $152,635 | $398,029 | $931,896 | $206,544 |
| James Surek | $0 | $0 | $0 | — |

## C.  The Preclusive Deal Protection Devices

43.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

44.     By way of example, section 5.5(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 5.5(a) also demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

45.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Stryker. For example, pursuant to section 5.5(b) of the Merger Agreement, the Company must notify Stryker of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, section 5.5(d) requires that the Board grant Stryker four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior.  Stryker is able to match the unsolicited offer because, pursuant to section 5.5(d) of the Merger Agreement, the Company must provide Stryker with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

46.     In other words, the Merger Agreement gives Stryker access to any rival bidder's information and allows Stryker a free right to top any superior offer.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Entellus, because the Merger Agreement unfairly assures that any "auction" will favor Stryker and allow Stryker to piggy-back upon the due diligence of the foreclosed second bidder.

47.     In addition, pursuant to section 7.3(a) of the Merger Agreement, Entellus must pay Stryker a termination fee of $20.5 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer.

48.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Stryker's inadequate offer price.

**D.  The Materially Incomplete and Misleading Proxy**

49.     The Individual Defendants owe the stockholders a duty of candor. They must disclose all material information regarding the Proposed Transaction to Entellus stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

50.     On January 8, 2018, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Entellus stockholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning Piper Jaffray's Financial Analyses*

51.     First, with respect to the *Selected Public Companies Analysis,* the Proxy fails to

disclose the multiples for each of the selected companies for enterprise value/projected 2017 revenue, enterprise value/projected 2018 revenue, enterprise value/projected 2019 revenue, enterprise value/2017 gross profit, enterprise value/2018 gross profit, and enterprise value/2019 gross profit. The Proxy also fails to disclose whether Piper Jaffray performed any type of benchmarking analysis for Entellus in relation to the selected companies.

52.     Second, with respect to the *Selected M&A Transactions Analysis*, the Proxy fails to disclose the multiples for each of the selected transactions for enterprise value/LTM revenue and enterprise value/LTM gross profit. The Proxy also fails to disclose whether Piper Jaffray performed any type of benchmarking analysis for Entellus in relation to the selected transactions.

53.     Finally, with respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the analysis' resulting implied perpetuity growth rates, as well as the individual inputs and assumptions that Piper Jaffray used for the selection of discount rates of 10.0% to 12.0%. The Proxy also fails to disclose the methodology/data used by Piper Jaffray to determine the range of selected revenue exit multiples and the exact revenue metric to which the selected revenue exit multiples were applied.

### Materially Incomplete and Misleading Disclosures Concerning the Flawed Process

54.     The Proxy also fails to disclose material information concerning the sales process. For example, the Proxy fails to disclose the parties with which Entellus and Piper Jaffray discussed strategic alternatives throughout 2015 and early 2016.

55.     The Proxy also fails to disclose when the Base Case Forecasts were updated and the basis for updating the forecasts.

56.     In addition, the Proxy fails to disclose the representatives of Entellus who discussed Stryker's proposed purchase price with representatives of Stryker, Guggenhim Securities and Piper Jaffray via telephone on November 9, 2017.

57.     The Proxy also fails to disclose whether Company A, Company B or Company D ever received the Base Case Forecasts, the Updated Base Case Forecasts or the Final Base Case Forecasts.

58.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Entellus stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

59.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

60.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

61.     Further, the Proxy indicates that on December 4, 2017 and December 6, 2017, Piper Jaffray reviewed with the Board its financial analysis of the Merger Consideration and on December 6, 2017 delivered to the Board an oral opinion, which was confirmed by delivery of a

written opinion that same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Entellus stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Piper Jaffray's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

62.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

63.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.     Defendants have filed the Proxy with the SEC with the intention of soliciting Entellus stockholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

65.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Entellus, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

66.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

67.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) the value of Entellus shares and the financial analyses performed by Piper Jaffray in support of its fairness opinion; and (ii) the sales process.

68.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Piper Jaffray reviewed and discussed its financial analyses with the Board during various meetings including on December 4, 2017 and December 6, 2017, and further states that the Board relied upon Piper Jaffray's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

69.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can

Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     The Individual Defendants acted as controlling persons of Entellus within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Entellus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

72.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains

the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

74.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

75.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

76.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and her counsel as Class Counsel;

B.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Proxy with the SEC or otherwise disseminating a Definitive Proxy to Entellus stockholders unless and until Defendants agree to include the material information identified above in the Definitive Proxy;

C.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 16, 2018                    **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

By:  s/Gregg M. Fishbein                .
     Gregg M. Fishbein, No. 202009
     Richard A. Lockridge, No. 64117
     Kate M. Baxter-Kauf, No. 392037
100 Washington Avenue South, Suite 2200
Minneapolis. MN 55401-2159
Tel: 612-339-6900
Fax: 612-339-0981
gmfishbein@locklaw.com
ralockridge@locklaw.com
kmbaxter-kauf@locklaw.com

ROWLEY LAW PLLC
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: 914-400-1920
Fax: 914-301-3514

*Counsel for Plaintiff Pete Horstman*